**CASE NO. 13-4269**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN F. SMITH,                          :

     Petitioner-Appellant,          :

     v.                             :          2254 HABEAS CASE

ROBIN KNAB,                            :
Warden,
                                       :

     Respondent-Appellee.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

_____

**PETITIONER-APPELLANT'S MERIT BRIEF**
_____

THE OFFICE OF THE OHIO PUBLIC DEFENDER

SHERYL TRZASKA #0079915
ASSISTANT STATE PUBLIC DEFENDER

250 East Broad Street, Suite 1400
Columbus, Ohio 43215
(614) 466-5394
(614) 752-5167 (Fax)
E-mail: sheryl.trzaska@opd.ohio.gov

COUNSEL FOR PETITIONER-APPELLANT,
JOHN F. SMITH

**CASE NO. 13-4269**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN F. SMITH,                              :

     Petitioner-Appellant,         :

     v.                                   :        2254 HABEAS CASE

ROBIN KNAB,                               :
Warden,
                                             :
     Respondent- Appellee.
_____

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTERESTS**
_____

As required by 6th Cir. R. 26.1, John F. Smith, through counsel, makes the

following disclosures:

1.    John F. Smith, Petitioner-Appellant herein, is neither a
subsidiary nor an affiliate of a publicly owned corporation.

2.    There is no publicly owned corporation, nor a party to the
appeal, that has a financial interest in the outcome.

/s/Sheryl Trzaska                    February 12, 2014
SHERYL TRZASKA #0079915       DATE

COUNSEL FOR JOHN F. SMITH

# TABLE OF CONTENTS

**Page No.**

DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTERESTS .................................................................... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................... vii

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ......................................................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ....................... 2

STANDARD OF REVIEW ........................................................................ 3

STATEMENT OF THE CASE AND THE FACTS .................................. 4

    I.     Facts ................................................................................... 4

    II.    Trial Court Proceedings ................................................... 9

    III.   Direct Appeal Proceedings ............................................... 9

    IV.   Proceedings on Petition for Postconviction Relief ......... 11

    V.    Appeal of the Denial of the Petition for Postconviction Relief ......... 12

    VI.   Federal Appellate Proceedings ....................................... 13

SUMMARY OF THE ARGUMENT ....................................................... 15

ARGUMENT ............................................................................................. 16

# TABLE OF CONTENTS

**Page No.**

GROUND FOR RELIEF:

Petitioner-Appellant Smith was denied his right to the effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Strickland v. Washington, 466 U.S. 668 (1984). ...16

A.  The standard for the effective assistance of counsel was established in *Strickland v. Washington*. .........................................................................16

    1.  In order to be considered sound trial strategy, counsel's decisions must be reasonable.. ...........................................................................18

        a.  Counsel's failure to investigate is unreasonable............................18

        b.  Counsel's failure to utilize expert testimony can be unreasonable...................................................................................19

B.  John F. Smith was denied the effective assistance of counsel.......................20

    1.  Counsel failed to consult with and use an expert endocrinologist......20

    2.  Trial counsel's failure constituted deficient performance ..................21

C.  The Ohio courts and district court employed an unreasonable application of *Strickland v. Washington* in this case. ................................25

CONCLUSION .......................................................................................................28

CERTIFICATE OF COMPLIANCE.......................................................................29

CERTIFICATE OF SERVICE ................................................................................29

APPELLANT'S CERTIFICATION OF THE DISTRICT COURT RECORD......30

# TABLE OF AUTHORITIES

**Page No.**

**CASES:**

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ...................................................19

*Bigelow v. Williams*, 367 F.3d 562 (2004) ...........................................19

*Clinkscale v. Carter*, 375 F.3d 430 (6th Cir. 2004)...............................4

*Dofar v. Dretke*, 368 F.3d 441 (5th Cir. 2004)....................................20

*Douglas v. California*, 372 U.S. 353 (1963) ........................................16

*Evitts v. Lucey*, 469 U.S. 387 (1985) ...................................................17

*Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995) ............................19, 25, 28

*Harrington v. Richter*, 131 S. Ct. 770 (2011)....................................3,4

*Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000)......................................3

*Horton v. Zant*, 941 F.2d 1449 (11th Cir. 1991) ..................................28

*Lockhart v. Fretwell*, 506 U.S. 364 (1993).........................................17

*Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) ...............................3, 4

*O'Hara v. Wigginton*, 24 F.3d 823 (6th Cir. 1994)..............................18

*Reynoso v. Giurbino*, 462 F.3d 1099 (9th Cir. 2006) ..........................19

*Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007) ..............................19

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000) ........................................19

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................*passim*

*Towns v. Smith*, 395 F.3d 251 (6th Cir. 2007)................................18, 19

# TABLE OF AUTHORITIES

Page No.

**CASES: (cont'd)**

*U.S. v. Cronic,* 466 U.S. 648 (1984)....................................................17

*Wiggins v. Smith*, 539 U.S. 510 (2003)................................4, 18, 25, 26

*Williams v. Coyle*, 260 F.3d 684 (6th Cir. 2001)...................................4

*Williams v. Taylor,* 529 U.S. 362 (2000)..............................................3

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. amend. V .................................................10, 12, 13

U.S. Const. amend. VI ...................................................*passim*

U.S. Const. amend. XIV ...................................................*passim*

U.S. Const. art. I, § 2 ..........................................................28

U.S. Const. art. I, § 10 ............................................11, 13, 28

U.S. Const. art. I, § 16 .............................10, 11, 12, 13, 28

U.S. Const. art. II, § 39 ....................................................28

**STATUTORY PROVISIONS:**

28 U.S.C. § 2254 ....................................................... 1, 3, 13, 17

O.R.C. 2903.01..................................................................... 10

O.R.C. 2903.04...................................................................... 9

O.R.C. 2903.11 .......................................................................9

O. R. C. 2953.21 .............................................................11, 28

# TABLE OF AUTHORITIES

**Page No.**

**RULE:**

Ohio Crim.R. 29.................................................................................10

**OTHER:**

ABA Standards for Criminal Justice 4-4.1(a)(3d. 1993)...................19

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

In accordance with 6th Cir. R. 34(a), Petitioner-Appellant, John F. Smith submits that oral argument should be permitted in this habeas appeal.  Mr. Smith seeks relief on the ground that he was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), when trial counsel failed to consult with and use experts in the area of endocrinology and diabetes treatment to explain the victim's cause of death, and refute the testimony of the State's expert witness.

Oral argument will assist this Court in its understanding of the facts and procedural history of Mr. Smith's case as well as ensure that this Court's questions concerning facts on the record, the facts and legal conclusions of federal law, and the application of federal law to this case are answered.

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

I.    Petitioner-Appellant John F. Smith sought a Writ of Habeas Corpus in accordance with 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio, Eastern Division on September 20, 2011. (Record Entry No. 2, Petition for a Writ of Habeas Corpus, Page ID #3).

II.   The Superintendent filed a Return of Writ on December 15, 2011. (Record Entry No. 6, Return of Writ, Page ID #91).

III.  Petitioner-Appellant Smith responded to the Superintendent's arguments in a Traverse which was filed on February 28, 2012. (Record Entry No. 10, Reply to Respondent's Answer, Page ID #1159).

IV.   On June 28, 2013, the Magistrate issued a Report, recommending that Petitioner-Appellant Smith's petition be denied. (Record Entry No. 11, Report and Recommendations, Page ID #1191).

V.    Petitioner-Appellant Smith filed objections to the Magistrate's Report on July 10, 2013. (Record Entry No. 12, Objections, Page ID #1217).

VI.   The district court adopted the Magistrate's Report and Recommendations and denied Petitioner-Appellant Smith's petition on September 10, 2013, but granted a certificate of appealability. (Record Entry No. 13, Opinion and Order, Page ID #1228, 1235).

VII.  On October 29, 2013, Petitioner-Appellant Smith filed a timely appeal. (Record No. 16, Notice of Appeal, Page ID #1239).

# CASE NO. 13-4269

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOHN F. SMITH,                          :

     Petitioner-Appellant,              :

     v.                                 :        2254 HABEAS CASE

ROBIN KNAB,                             :
Warden,
                                   :

     Respondent-Appellee.

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

_____

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

_____

Whether John F. Smith was denied the right to the effective assistance of counsel when counsel failed to hire or consult with experts, and there is a reasonable probability that such consultation and testimony would have resulted in a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668 (1984).

2

## STANDARD OF REVIEW

"This Court applies de novo review to the decision of the district court in a habeas corpus proceeding." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), citing *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). A state prisoner's petition may be granted when the state court's adjudication of the prisoner's constitutional claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-413 (2000). The United States Supreme Court has issued guidance regarding how the "unreasonable application" standard should be applied in AEDPA cases. In *Harrington v. Richter*, 131 S. Ct. 770, 786-

87 (2011), the Court stated that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

When a habeas claim is not adjudicated on its merits by a state court, due deference to the state courts' determination of the facts does not apply. *Stegall*, 340 F.3d at 436, *citing Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001). *See, also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004), *cert. denied,* 543 U.S. 1177 (2005). Instead, this Court considers "the totality of the evidence—'both that adduced at trial, *and the evidence adduced in the habeas proceedings*,'" *Clinkscale v. Carter*, 375 F.3d at 436, *quoting Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (emphasis provided in *Wiggins*) and reviews questions of law and mixed questions of law and fact de novo. *Stegall*, 340 F.3d at 436.

## STATEMENT OF THE CASE AND THE FACTS

### I.  Facts.

Bryan Biser was diabetic, and developed diabetic ketoacidosis. (Record Entry No. 6-6, Page ID #1015-1017). The ketoacidosis led to necrotic bowel, and caused his death. (Record Entry No. 6-6, Page ID #1015-1017). Five days before he died, Mr. Biser received a head injury as the result of a single punch from

Petitioner-Appellant John F. Smith, but the injury was not significant enough to cause his death. (Record Entry No. 6-6, Page ID #1017-1018, 1019).

At the time of that injury, Mr. Biser was thirty-nine years old. (Record Entry No. 6-6, Page ID #832). He attempted to break up a verbal altercation between his neighbor and Mr. Smith. (Record Entry No. 6-6, Page ID #843-845). Mr. Smith turned to Mr. Biser and delivered one punch to his face. (Record Entry No. 6-6, Page ID #846). Mr. Biser fell to the ground, and was unconscious for several minutes. (Record Entry No. 6-6, Page ID #847). Neighbors called an ambulance, which arrived after Mr. Biser had regained consciousness. (Record Entry No. 6-6, Page ID #936). The ambulance transported Mr. Biser to the emergency room, where he denied being in pain. (Record Entry No. 6-6, Page ID #947). He complained of a laceration to his right eye, and a bump to the back of his head, but answered questions appropriately and followed commands appropriately. (Record Entry No. 6-6, Page ID #946-947). Mr. Biser refused treatment at the emergency room for his head injury, and he also refused treatment for his Type 1 diabetes. (Record Entry No. 6-8, Page ID #1108). At the time that he was treated at the emergency room, Mr. Biser had an elevated blood-glucose level of 465, which required immediate medical attention. (Record Entry No. 6-6, Page ID #1013). Mr. Biser was unemployed, did not carry health insurance, and

reported taking "regular insulin" for his diabetes.  (Record Entry No. 6-8, Page ID #1109).

Mr. Biser's neighbors, and his cousin, Beth Spangler, checked on Mr. Biser several times over the next four days.  (Record Entry No. 6-6, Page ID #911, 986-988).  He stated each time that he felt sick, and wanted to be left alone, but he told Ms. Spangler that he had been taking his insulin.  (Record Entry No. 6-6, Page ID #911, 986-988, 989).  On April 19, 2005, Mr. Biser's apartment manager found him, unconscious, in his apartment.  (Record Entry No. 6-6, Page ID #919).  The manager called an ambulance, and paramedics found that Mr. Biser's blood-glucose level was at 28, which is extremely low.  (Record Entry No. 6-6, Page ID #920, Record Entry No. 6-8, Page ID #1111-1112).  The paramedics administered an injection of Glucagon, a medication which acutely elevates the blood sugar. (Record Entry No. 6-8, Page ID #1112).

After paramedics transported him to the hospital, Mr. Biser underwent a CAT scan of his head, which indicated that he had a possible skull fracture, a small subdural hematoma, and subarachnoid hemorrhage, but those injuries were not significant enough to be fatal.  (Record Entry No. 6-6, Page ID #1017-1018, 1019). Mr. Biser was in severe diabetic ketoacidosis.  (Record Entry No. 6-6, Page ID #1016).  At the emergency room, his blood-glucose level was 1,169, and his glycohemoglobin A1c level was an elevated 9.7.  (Record Entry No. 6-8, ID

6

#1111).  Mr. Biser was transported to Grant Medical Center in Columbus, Ohio, where he underwent exploratory surgery for a distended abdomen.  (Record Entry No. 6-6, Page ID #1008).  The surgeons discovered that his small bowel, and a portion of his right colon, were necrotic.  (Record Entry No. 6-6, Page ID #1008).  There is no way to survive that condition, and Mr. Biser died several hours later.  (Record Entry No. 6-6, Page ID #1008).

Mr. Smith was charged with, and convicted of, felonious assault, and involuntary manslaughter, and sentenced to an eight-year prison term.  (Record Entry No. 6, Exhibits 1-3).  At trial, forensic neuropathologist, Dr. William Cox, testified for the State that Mr. Biser died from the diabetic ketoacidosis, but that the head injury from the assault by Mr. Smith caused his death in an indirect fashion.  (Record Entry No. 6-6, Page ID #1006-1007).  Although Dr. Cox did not examine Mr. Biser before he died, Dr. Cox reasoned that Mr. Biser's head injury "adversely affected his ability to look after himself," and "in his case that's crucial because he is a diabetic which requires as I understood the record, insulin.  And it's incredibly important that he stays on top of that."  (Record Entry No. 6-6, Page ID #1007).  In Dr. Cox's opinion, Mr. Biser's head injury played a role in his death in an indirect fashion, in that it caused him to mistreat his diabetes, and he died from the subsequent ketoacidosis.  (Record Entry No. 6-6, Page ID #1007-1008).

Mr. Smith did not present any evidence or witnesses at trial. None of the State's witnesses testified about Mr. Biser's blood glucose levels, the type or amount of insulin he took, his glycohemoglobin A1c level and what that level indicated, or the purpose of the paramedics administering the drug Glucagon.

In postconviction, Mr. Smith presented an affidavit, report, and curriculum vitae of endocrinologist Dr. Elena Christofides, M.D., F.A.C.E., as well as an affidavit from appellate counsel. (Record Entry No. 6-8, Page ID #1092-1095; Record Entry No. 10-1, Page ID #1175-1190). Dr. Christofides's report included medical and technical information regarding the type of non-prescription insulin that Mr. Biser took, and why it was inappropriate to treat his disease; that she could tell from his GlycoHemoglobin and blood glucose levels that Mr. Biser's diabetes was uncontrolled at the time of the initial assault, and that he overdosed on insulin. (Record Entry No. 10-1, Page ID #1179-1188). Dr. Christofides further explained that medical personnel administered medication to Mr. Biser in order to acutely elevate his blood glucose level, and that she could tell that the medication was necessary because he had taken too much insulin. (Record Entry No. 10-1, Page ID #1179-1188). Also, Dr. Christofides testified at the evidentiary hearing that if Mr. Biser's head injury had been the cause of his overdose on insulin, he would have been unconscious and in a diabetic coma within twenty-four to forty-eight hours from the time of the assault. (Record Entry No. 6-8, Page ID #1130).

However, Mr. Biser was up and talking to his family and neighbors over the next several days, and was not found unconscious until four days after the assault. (Record Entry No. 6-8, Page ID #1130).

Appellate counsel's affidavit related to her investigation of trial counsel's strategy—that trial counsel did not investigate whether Mr. Biser's diabetes was properly treated or controlled, the way in which his diabetes was mismanaged, or the timeframe of the onset of ketoacidosis in relation to the assault. (Record Entry No. 10-1, Page ID #1189-1190).

## II.    Trial Court Proceedings.

John F. Smith was indicted by a Ross County, Ohio grand jury for one count of involuntary manslaughter, in violation of Ohio Revised Code §2903.04 and a felony of the first degree, and one count of felonious assault, in violation of R.C. §2903.11 and a felony of the second degree. (Record Entry No. 6, Exhibit 1, Case No. 05 CR 192). Smith pled not guilty, and a jury found him guilty as charged in the indictment. (Record Entry No. 6, Exhibit 2). At the March 28, 2006 sentencing hearing, the trial court merged the two convictions and sentenced Smith to eight years' incarceration for involuntary manslaughter. (Record Entry No. 6, Exhibit 3)

## III.    Direct Appeal Proceedings.

John F. Smith filed a timely direct appeal to the Fourth District Court of Appeals, Washington County, Ohio, raising the following errors:

> The State failed to produce sufficient evidence to prove that Mr. Smith was guilty of involuntary manslaughter as alleged in the indictment. That deprived Mr. Smith of his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
>
> The jury's verdict, finding Mr. Smith guilty of involuntary manslaughter, was against the manifest weight of the evidence.
>
> The trial court erred by imposing restitution without considering Mr. Smith's ability to pay.

(Record Entry No. 6, Exhibit 5). On August 18, 2006, the State filed its brief. (Record Entry No. 6, Exhibit 6). On August 29, 2006, Mr. Smith filed a reply brief. (Record Entry No. 6, Exhibit 7). On April 17, 2007, the Court of Appeals affirmed the judgment of the trial court. (Record Entry No. 6, Exhibit 8).

On June 1, 2007, Mr. Smith filed an appeal in the Supreme Court of Ohio, presenting the following proposition of law:

> Felonious assault cannot serve as the predicate offense for involuntary manslaughter, when the decedent's mistreated disease was an unforeseeable and abnormal cause of death. R.C. 2903.01; Crim.R. 29.

(Record Entry No. 6, Exhibit 10). The State filed a memorandum in opposition to Mr. Smith's proposition of law. (Record Entry No. 6, Exhibit 11). On October 3, 2007, the Supreme Court of Ohio declined leave to appeal and dismissed the case. (Record Entry No. 6, Exhibit 12).

## IV.    Proceedings on Petition for Postconviction Relief.

On December 27, 2006, while his direct appeal was pending, John F. Smith filed a timely petition to vacate and set aside judgment under R.C. 2953.21, alleging ineffective assistance of trial counsel for failure to present evidence that the assault by Mr. Smith was medically unrelated to Bryan Biser's cause of death:

> Defense counsel provided ineffective assistance by failing to present evidence that Mr. Biser's death was not caused by behavior that resulted from his head injury; and by failing to seek the testimony of an expert witness to rebut the testimony of the State's witnesses. Because of counsel's ineffective assistance, Mr. Smith's conviction and sentence are void and/or voidable. Sixth and Fourteenth Amendments to the United States Constitution; Section 10 and 16, Article 1, Ohio Constitution; *Strickland v. Washington* (1984), 466 U.S. 668.

(Record Entry No. 6, Exhibit 13).

The trial court granted Mr. Smith an evidentiary hearing on the petition, finding that Mr. Smith met the narrow requirements of R.C. 2953.21, based upon the affidavit and report of a new expert, Dr. Elena Christophides, M.D., F.A.C.E. (Record Entry No. 6, Exhibit 17; Record Entry No. 10-1, Page ID #1175-1188). After the evidentiary hearing and subsequent briefing, the trial court decided that the petition claim was barred by res judiciata and denied the petition. (Record Entry No. 6, Exhibit 26). The court also opined that trial counsel was not ineffective. (Record Entry No. 6, Exhibit 26).

**V.    Appeal of the Denial of the Petition for Postconviction Relief:**

Following the denial of his petition for postconviction relief, Mr. Smith filed a timely appeal to the Ross County, Ohio, Court of Appeals, and raised the following errors:

> The trial court erred in finding that Appellant's petition for postconviction relief was barred by res judicata.
>
> The trial court erred in finding that appellant had not demonstrated grounds for postconviction relief.

(Record Entry No. 6, Exhibits 27-28, Case No. 09 CA 3128).  On February 8, 2011, the court of appeals decided that Mr. Smith's postconviction petition was barred by res judicata and affirmed the judgment of the trial court.  (Record Entry No. 6, Exhibit 31).

Mr. Smith filed a timely appeal and memorandum in support of jurisdiction in the Supreme Court of Ohio on March 25, 2011.  (Record Entry No. 6, Exhibit 32).  In it, he raised the following propositions of law:

> When defense counsel does not investigate, call any witnesses, or present any evidence at trial, an expert's opinion in postconviction is not barred by res judicata, or as an alternate theory of defense.  Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Section 16 of the Ohio Constitution.
>
> When an expert's analysis and opinion is necessary to set forth a postconviction claim, a defendant's claim that trial counsel was ineffective for failing to call the expert witness cannot be barred on the grounds that the information relied upon by the expert was

12

available at the time of trial and could have been raised on direct appeal. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Section 16 of the Ohio Constitution.

When there is a reasonable probability that the result of a defendant's trial would have been different if an expert witness had testified on defendant's behalf, defense counsel renders ineffective assistance for failing to investigate and present an expert witness. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; *Strickland v. Washington* (1984), 466 U.S. 668.

(Record Entry No. 6, Exhibit 33). On June 22, 2011, the Supreme Court of Ohio

declined jurisdiction and dismissed Mr. Smith's appeal. (Record Entry No. 6,

Exhibit 34).

## VI.    Federal Appellate Proceedings.

In accordance with 28 U.S.C. § 2254, Mr. Smith filed a Petition for a Writ of

Habeas Corpus on September 20, 2011 in the United States District Court for the

Southern District of Ohio, Eastern Division, asserting the following ground for

relief:

Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to investigate and present evidence that the victim's death was not caused by behavior that resulted from his head injury; and by failing to present evidence to rebut the testimony of the State's witnesses. United States Constitution, Sixth and Fourteenth Amendments; *Strickland v. Washington*, 466 U.S. 694 (1984).

(Record Entry No. 2).

13

The Warden filed a Return of Writ on December 15, 2011, arguing that Mr. Smith's claim was procedurally barred under the state doctrine of res judicata, or alternatively that there was no probative evidence to support Mr. Smith's claim. (Record Entry No. 6, Page ID #49, 55).

Mr. Smith filed a Traverse in response to the Return of Writ on February 28, 2012.  (Record Entry No. 10, Reply to Respondent's Answer, Page ID #1159).  In it, he set forth how trial counsel was ineffective for failing to consult with and hire medical experts in the area of endocrinology, as there was a sufficient probability that such consultation and use would have resulted in a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  (Record Entry No. 10, Reply to Respondent's Answer, Page ID #1166-1169).

On June 28, 2013, the United States Magistrate Judge for the Southern District of Ohio, Eastern Division, issued a Report and Recommendation finding that Mr. Smith's petition was not barred by res judicata and considered the merits of his claim.  (Record Entry No. 11, Page ID #1208-1209).  The Magistrate Judge concluded that the state courts did not err when they held that Mr. Smith failed to demonstrate that trial counsel was ineffective.  (Record Entry No. 11, Page ID #1213-1216).

Mr. Smith filed objections to the Magistrate's Report and Recommendation on July 10, 2013.  (Record Entry No. 12, Page ID #1217).  On September 30, 2013,

the district court adopted the Magistrate's Report and Recommendation and denied Mr. Smith's petition.  (Record Entry No. 13, Opinion and Order, Page ID #1228).  Mr. Smith filed a timely appeal on October 29, 2013.  (Record Entry No. 16, Notice of Appeal).

## SUMMARY OF THE ARGUMENT

At Mr. Smith's trial, forensic neuropathologist William Cox, M.D., testified that because Mr. Smith punched Mr. Biser in the head, he did not properly care for his diabetes in the days that followed.  Mr. Biser died five days after the assault, from diabetic complications.  Dr. Cox drew a specific causal connection that supported Mr. Smith's conviction of involuntary manslaughter.  Mr. Smith's trial attorney did not investigate Mr. Biser's metabolic condition and did not have a strategic reason for failing to consult with an endocrinologist about the status of Mr. Biser's diabetes.  Trial counsel presented no evidence and called no witnesses on Mr. Smith's behalf.

Through appellate counsel, Mr. Smith filed a postconviction petition, presenting an affidavit and report from an expert witness, endocrinologist Dr. Elena Christofides, M.D., F.A.C.E.  Had trial counsel called Dr. Christofides to testify, the jury would have considered the information included in her testimony at the postconviction hearing:  that Mr. Biser took the wrong kind of insulin; he obviously overdosed on insulin on April 19, 2005; and that if the injury from Mr.

15

Smith's assault caused Mr. Biser to mistreat his diabetes, he would have been in a coma within twenty-four to forty-eight hours after the assault, not four days later.

Trial counsel failed to consult with an expert witness to learn about the type and amount of insulin that Mr. Biser had taken, and the timeframe in which he would have died had his head injury been the cause of his diabetic mismanagement. Trial counsel's failures were prejudicial, as there is a reasonable probability that had Mr. Smith's jury heard testimony from Dr. Christofides regarding the state of Mr. Biser's mistreated diabetes, the result of the trial would have been different, and he would not have been convicted of involuntary manslaughter.

## ARGUMENT

## GROUND FOR RELIEF

**Petitioner-Appellant Smith was denied his right to the effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668 (1984).**

**A.    The standard for the effective assistance of counsel was established in *Strickland v. Washington*.**

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to the effective assistance of counsel. *Douglas v. California*, 372 U.S. 353 (1963). The right to the effective assistance of counsel is the right of the accused to require the prosecution's case to survive

the crucible of meaningful adversarial testing. *U.S. v. Cronic,* 466 U.S. 648, 656 (1984). "If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659. Thus, a defendant whose counsel fails to provide effective representation is in no better position than one who has no counsel at all. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

In order to obtain relief on a claim of ineffective assistance of counsel, an appellant must show that his counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced thereby. *Strickland*, 466 U.S. at 687-688. In order to sustain a finding of prejudice, the Petitioner must demonstrate that there exists a "reasonable probability" that the result of trial would have been different, but for counsel's deficient performance. *Id.* at 694. A reasonable probability is a probability "sufficient to undermine the outcome" of the trial. *Id.* A reviewing court should focus on whether the trial was fundamentally fair and reliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

A state court's conclusion that counsel rendered ineffective assistance is a mixed question of law and fact, and thus not subject to §2254(d)(e)(1)'s presumption. *See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

Therefore, the de novo standard of review applies to this Court's determination of whether the district court's conclusions were correct. *Id*.

**1.    In order to be considered sound trial strategy, counsel's decisions must be reasonable.**

A reviewing court must be highly deferential to and indulge in a strong presumption that a lawyer's conduct falls within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. If the challenged action might be considered "sound trial strategy" under the circumstances, counsel's behavior will not be found deficient. *Id*.

**a.    Counsel's failure to investigate is unreasonable.**

*Strickland* requires that trial counsel's behavior be examined under an objective standard of reasonableness. How much deference a reviewing court must give to counsel's strategic decisions depends on the adequacy of the investigation underlying counsel's decisions. *Wiggins*, 539 U.S. at 521. While "strategic choices made after thorough investigation of law and facts…are virtually unchallengeable," counsel's decisions are not reasonable where the record demonstrates the absence of a complete investigation. *Strickland*, 466 U.S. at 689-690; *see also O'Hara v. Wigginton*, 24 F.3d 823, 282 (6th Cir. 1994).

A lawyer's duty "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2007). Only after a full investigation can

counsel make an informed, tactical decision about which information would be helpful in a client's case. *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995). "A failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted." *Bigelow v. Williams*, 367 F.3d 562, 570 (2004), *citing* ABA Standards for Criminal Justice 4-4.1(a)(3d. 1993).

"The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *accord Towns v. Smith*, 395 F.3d 251, 258 (2005). "A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." *Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) *quoting Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006).

**b.    Counsel's failure to utilize expert testimony can be unreasonable.**

The United States Supreme Court has held that an accused is entitled to the assistance of experts. *Ake v. Oklahoma*, 470 U.S. 68 (1985). And other courts have found that counsel's failure to investigate and utilize an expert when that expert's testimony could have provided evidence that was inconsistent with a defendant's guilt, cannot be characterized as a reasonable exercise of professional

judgment.  *Dofar v. Dretke*, 368 F.3d 441 (5th Cir. 2004) (finding counsel ineffective for failing to use a ballistics expert when the expert could have provided the court with evidence that helped exculpate the defendant).

**B.    John F. Smith was denied the effective assistance of trial counsel.**

**1.    Counsel failed to consult with and use an expert endocrinologist.**

At Mr. Smith's trial, the State's witness, Dr. Cox, drew a very specific connection between Mr. Biser's head injury and his death from diabetic ketoacidosis—Dr. Cox testified that the manner of Mr. Biser's death was a homicide because Mr. Biser's head injury contributed to his death in an indirect manner.  (Record Entry No. 6-6, Page ID #1006-1007).  However, Dr. Cox made no mention why he believed that Mr. Biser's head injury complicated his diabetes.  Dr. Cox generally reasoned that Mr. Biser's head injury "adversely affected his ability to look after himself," and "in his case that's crucial because he is a diabetic which requires as I understood the record, insulin.  And it's incredibly important that he stays on top of that." (Record Entry No. 6-6, Page ID #1007).  Defense counsel presented no evidence to rebut the State's evidence.

In support of his claim that trial counsel rendered ineffective assistance by failing to investigate or call an expert in the field of endocrinology, Mr. Smith submitted an affidavit from appellate counsel regarding appellate counsel's investigation into trial counsel's strategy.  Appellate counsel learned that trial

counsel did not investigate whether Mr. Biser's diabetes was properly treated or controlled, did not investigate the ways in which his diabetes was mismanaged, or the timeframe of the onset of ketoacidosis in relation to the assault by Mr. Smith. (Record Entry No. 6, Exhibit 13; Record Entry No. 10-1, Page ID #1179-1188).

## 2.    Trial counsel's failure constituted deficient performance.

To support his claim that the use of an expert endocrinologist would have substantially undermined the outcome at trial, Mr. Smith submitted a report and affidavit from Dr. Elena Christofides, a highly experienced endocrinologist who has published and taught extensively in diabetes treatment and management. (Record Entry No. 10-1, Page ID #1179-1188).   At Mr. Smith's evidentiary hearing, Dr. Elena Christofides testified about the condition of type one diabetes, and the state of Mr. Biser's health—information which was not known to trial counsel, and which trial counsel did not investigate.  (Record Entry No. 6-8, Page ID #1091-1150).

Dr. Christofides explained that "type one diabetics because they are absolutely completely insulin deficient require[] several different kinds of insulin * * * long acting insulin is something that is necessary for sort of just basic maintenance of physiologic functions * * * these require absolutely the supervision of a physician to understand the role that they play in the daily activities of the patient." (Record Entry No. 6-8, Page ID #1096-1097).   And additionally, "a

21

person is going to take multi-insulin or what we could call rapid or short acting insulin and that is absolutely necessary to handle the short term needs or increased needs for insulin during a meal…." (Record Entry No. 6-8, Page ID #1096). Dr. Christofides further testified that Type 1 diabetics cannot survive if they do not treat their diabetes with both types of insulin. (Record Entry No. 6-8, Page ID #1097).

At trial, it was assumed that Mr. Biser was "healthy in all other respects" before his head injury. (Record Entry No. 6, Page ID #1011). Dr. Christofides reviewed all of Mr. Biser's medical records that were available, and explained how he was first diagnosed with Type 1 diabetes, prescribed long-acting insulin, and instructed to report to a non-profit facility called Respite Care for diabetes education and care. (Record Entry No. 6-8, Page ID #1104). However, Mr. Biser never received education or treatment at Respite Care, and it appears that he never followed up with a physician. (Record Entry No. 6-8, Page ID #1106-1111). When Mr. Biser visited the emergency room after he was assaulted by Mr. Smith, Mr. Biser advised staff that he had no doctor, and he listed his medications as "regular insulin." His blood glucose levels were critically elevated, but he refused insulin at the emergency room, and was discharged against medical advice.

The State's case against Mr. Smith was based on its argument that Mr. Biser came home from the emergency room after the assault, was disoriented from his

22

head injury, and generally did not care for his diabetes, which resulted in his death. However, Mr. Biser's blood glucose level at the time of the assault was such that it would have interfered with his brain function, regardless of whether a head injury also occurred.  (Record Entry No. 6-8, Page ID #1125).  More importantly, Dr. Christofides testified that because Mr. Biser was "just on regular insulin he clearly has no idea how much he should be taking normally anyway…he had no comprehension of what he was supposed to be taking anyway at the baseline." (Record Entry No. 6-8, Page ID #1110-1111).

Mr. Biser "was clearly not taking his insulin the way he should.  He was taking multiple doses of a lot of insulin to try and bring it down and he simply, because he was uneducated about his diabetes, he did what we call stacking." (Record Entry No. 6-8, Page ID #1112).  And, "[w]hen you take multiple doses of insulin over a period of time without regard for what that insulin's going to do, especially something like regular which is much more tricky to use, he obviously just had an overdose of insulin."  (Record Entry No. 6-8, Page ID #1112).  At trial, there was no mention of what amount or type of insulin Mr. Biser was taking, let alone the fact that he was taking the wrong type, and did not know how to care for his disease.

Further, Dr. Christofides explained that the probable timeline for an insulin overdose that would have been the result of a head injury would have had Mr.

Biser unconscious and in a diabetic coma within twenty-four to forty-eight hours from the time of the assault. (Record Entry No. 6-8, Page ID #1130-1131; Record Entry No. 10-1, Page ID #1179-1188). However, Mr. Biser was up and speaking to his family and neighbors over the next several days. (Record Entry No. 6-6, Page ID #911, 986-988). He told his friends that he did not want to be bothered; he assured his cousin that he had been taking his insulin. (Record Entry No. 6-6, Page ID #911, 989). It was not until four days after the assault he was found in diabetic ketoacidosis from an overdose of insulin. (Record Entry No. 6-8, Page ID #1130).

Dr. Christofides testified that Type 1 diabetics enjoy what is referred to as a "honeymoon phase" during approximately the first year after their diagnosis, after they have some insulin entering their systems. (Record Entry No. 6-8, Page ID #1100). Diabetics "could be rather lackadaisical about their diagnosis and actually get away with it, then after the honeymoon phase is over, if they are lackadaisical, if they are not under proper supervision to be forewarned, then they can actually decompensate very quickly after that one year mark." (Record Entry No. 6-8, Page ID #1100). Dr. Christofides was able to tell from Mr. Biser's glycohemoglobin AIc levels that Mr. Biser's diabetes was out of control for several months before his April 19, 2005 trip to the emergency room. (Record Entry No. 6-8, Page ID #1114). Mr. Biser's insulin overdose and death occurred almost a year to the date

24

from his initial diagnosis with type one diabetes, which is consistent with the end of his honeymoon phase. (Record Entry No. 6-8, Page ID #1133-1134).

Trial counsel had a duty to investigate the Mr. Biser's metabolic state, as it was the direct cause of his death. *Glenn*, 71 F.3d at 1207. And, counsel had a duty to present this information at trial to rebut the State's case. *Id.* Counsel did neither; thus, his performance was legally deficient. *Strickland*, 466 U.S. at 687-688. Counsel's deficiency prejudiced Mr. Smith, because had the jury heard Dr. Christofides' testimony and the evidence of Mr. Biser's mismanaged diabetes and the expected timeframe for a diabetic coma if the result of the assault by Mr. Smith, the result of the trial would have been different. *Id.*

## C.    The Ohio courts and district court employed an unreasonable application of *Strickland v. Washington* in this case.

The state courts and district court unreasonably concluded that trial counsel provided effective assistance when counsel failed to investigate Mr. Biser's metabolic state and the cause of his diabetic coma and subsequent death. The United States Supreme Court has determined that the proper question before a reviewing court is not whether counsel's failure to call an expert was unreasonable, but whether the investigation supporting that decision was unreasonable. *Wiggins*, 539 U.S. at 533. The Court emphasized that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence," but that a decision

not to investigate "must be directly assessed for reasonableness in all circumstances." *Wiggins* at 533, *citing Strickland*, 466 U.S. at 691.

Dr. Christofides's affidavit and report expressly stated that her opinion about Mr. Biser's cause of death was to a reasonable degree of medical certainty. (Record Entry No. 10-1, Page ID #1179-1188). And, at the evidentiary hearing, she testified that his death was "completely and totally the result of his poor management of his poor management of his diabetes. The fact that he was found down in a coma, in DKA and in rhabdo, you don't fall down and go into rhabdomyolysis from blunt force trauma. * * * So all I'm saying is that his metabolic derangements were a direct result of his diabetes mismanagement, period." (Record Entry No. 6-8, Page ID #1140). No reasonable trial attorney would have declined to have the jury hear that testimony, and instead choose to present no evidence or witnesses to rebut the State's expert, as trial counsel did in this case.

At Mr. Smith's postconviction hearing, the State questioned Dr. Christofides extensively regarding the fact that she did not personally examine or treat Mr. Biser. (Record Entry No. 6-8, Page ID #1120-1144). However, the State's witness, Dr. Cox, testified at trial about Mr. Biser's behavior without having examined or treated Mr. Biser, either. It is ultimately the State's burden to prove that the assault by Mr. Smith caused Mr. Biser's death. The jury should have

26

heard the evidence from Dr. Christofides or comparable expert regarding Mr. Biser's diabetic health, before weighting whether or not the State met its burden. Due to counsel's failures, crucial information was not presented at trial to rebut the State's very general assertion that Mr. Biser was disoriented and failed to care for his diabetes.

When it overruled Mr. Smith's objection to the magistrate judge's Report and Recommendation, the district court reasoned "evidence indicated Biser had been self-treating his diabetes without any known difficulties for an unknown period of time, and he appeared to be healthy and functioning normally until the time of the assault."  (Record Entry No. 13, Page ID #1232).  That conclusion is controverted by the record of postconviction proceedings, the evidence that Mr. Biser's diabetes had been out of control for several months prior to the assault, and the evidence that Mr. Biser overdosed on regular insulin on April 19, 2005. (Record Entry No. 6, Exhibit 13; Record Entry No. 6-8, Page ID #1091-1151).

It was not until Dr. Christofides presented her report and affidavit in postconviction that the court was presented with medical information regarding the fact that Mr. Biser was not taking the proper insulin to treat his disease, that he had obviously overdosed on April 19, 2005, and that the timing of such an overdose is not consistent with his head injury being the cause.  (Record Entry No. 10-1, Page ID #1179-1188).  The evidence of Mr. Biser's metabolic state and mismanagement

27

of his disease should have been before the jury at Mr. Smith's trial for involuntary manslaughter; as should the likely timeline of his metabolic demise, which was independent of his head injury.

"It was not that such information could not be found, or that counsel made a reasoned decision to withhold the information for tactical or strategic reasons. The information was not presented to the jury because counsel never took the time to develop it." *Glenn*, 71 F.3d at 1207; *see also Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991), *cert. denied*, 503 U.S. 952 (1992), (where the court "rejected the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.").

As a result of trial counsel's failure to investigate and present this evidence at trial, Mr. Smith's constitutional rights were violated. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 2, 10, and 16; Article II, Section 39, Ohio Constitution; R.C. 2953.21; *Strickland*, 466 U.S. 668; *Glenn*, 71 F.3d at 1207.

## CONCLUSION

For all of the foregoing reasons, this Court should vacate the district court's decision and remand the case to the district court with the order that a writ of habeas corpus be issued.

Respectfully submitted,

OFFICE OF THE OHIO PUBLIC DEFENDER

/s/Sheryl Trzaska
SHERYL TRZASKA #0079915
Assistant State Public Defender

250 East Broad Street – Suite 1400
Columbus, Ohio 43215
(614) 466-5394
(614) 752-5167 (Fax)
E-mail:  sheryl.trzaska@opd.ohio.gov

COUNSEL FOR JOHN F. SMITH

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, a copy of the foregoing PETITIONER-APPELLANT JOHN F. SMITH'S MERIT BRIEF was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

/s/Sheryl Trzaska
Sheryl Trzaska #0079915
Assistant State Public Defender

COUNSEL FOR JOHN F. SMITH

29

# CASE NO. 13-4269

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOHN F. SMITH,                          :

      Petitioner-Appellant,      :

      v.                          :          2254 HABEAS CASE

ROBIN KNAB,                              :
Warden,
                                         :

      Respondent-Appellee.
_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION
_____

## APPELLANT'S CERTIFICATION OF THE DISTRICT COURT RECORD
_____

| Record Entry No. | Description of Item | Page ID# |
|---|---|---|
| 2 | Petition for Writ of Habeas Corpus | 2-29 |
| 6 | Return of Writ | 34-58 |
| 6-2 | Exhibit 1 to Return of Writ – Indictment | 63-64 |
| 6-2 | Exhibit 2 to Return of Writ – Judgment Entry | 65 |
| 6-2 | Exhibit 3 to Return of Writ – Judgment Entry of Sentence | 66-67 |
| 6-2 | Exhibit 4 to Return of Writ – Notice of Appeal | 68-78 |
| 6-2 | Exhibit 5 to Return of Writ – Merit Brief | 79-140 |
| 6-2 | Exhibit 6 to Return of Writ – Brief of Appellee | 141-162 |
| 6-2 | Exhibit 7 to Return of Writ – Reply Brief | 163-190 |
| 6-2 | Exhibit 8 to Return of Writ – Decision and Judgment Entry | 191-208 |

| 6-2 | Exhibit 9 to Return of Writ – Notice of Appeal | 209-211 |
|---|---|---|
| 6-2 | Exhibit 10 to Return of Writ – Memorandum in Support of Jurisdiction | 212-240 |
| 6-2 | Exhibit 11 to Return of Writ – Memorandum in Response of Appellee State of Ohio | 241-247 |
| 6-2 | Exhibit 12 to Return of Writ – Entry Denying Jurisdiction | 248 |
| 6-2 | Exhibit 13 to Return of Writ – Petition to Vacate and Set Aside Judgment, Under R.C. 2953.21 | 249-263 |
| 6-2 | Exhibit 14 to Return of Writ – Memorandum Contra Defendant's Petition for Postconviction Relief | 264-267 |
| 6-2 | Exhibit 15 to Return of Writ – Motion to Strike | 268-270 |
| 6-2 | Exhibit 16 to Return of Writ – Response to Respondent's Memorandum | 271-275 |
| 6-2 | Exhibit 17 to Return of Writ – Decision and Entry Granting Hearing on Petition to Vacate and Set Aside Judgment | 276-283 |
| 6-2 | Exhibit 18 to Return of Writ – Motion for Court Orders to Obtain Decedent's Medical Records | 284-286 |
| 6-2 | Exhibit 19 to Return of Writ – Brief in Support of Motion for Medical Records | 287-440 |
| 6-2 | Exhibit 20 to Return of Writ – Memorandum Contra Defendant's Motion for Orders to Obtain Medical Records | 441-443 |
| 6-2 | Exhibit 21 to Return of Writ – Memorandum Contra Defendant's Brief in Support of Medical Records | 444-448 |
| 6-2 | Exhibit 22 to Return of Writ – Opinion and Entry | 449-451 |
| 6-2 | Exhibit 23 to Return of Writ – Brief in Support of Defendant's Petition to Set Aside Conviction | 452-459 |
| 6-2 | Exhibit 24 to Return of Writ – Brief in Opposition of Defendant's Petition for Postconviction Relief | 460-470 |
| 6-2 | Exhibit 25 to Return of Writ – Brief in Response to Respondent's Brief | 471-478 |
| 6-2 | Exhibit 26 to Return of Writ – Entry | 479-481 |
| 6-3 | Exhibit 27 to Return of Writ – Notice of Appeal | 482-491 |

| 6-3 | Exhibit 28 to Return of Writ – Merit Brief | 492-631 |
|---|---|---|
| 6-3 | Exhibit 29 to Return of Writ – Brief of Appellee, State of Ohio | 632-647 |
| 6-3 | Exhibit 30 to Return of Writ – Reply Brief | 648-658 |
| 6-3 | Exhibit 31 to Return of Writ – Decision and Judgment Entry | 659-670 |
| 6-3 | Exhibit 32 to Return of Writ – Notice of Appeal | 671-673 |
| 6-3 | Exhibit 33 to Return of Writ – Memorandum in Support of Jurisdiction | 674-704 |
| 6-3 | Exhibit 34 to Return of Writ – Entry | 705 |
| 6-4 | Exhibit 35-1 to Return of Writ – Transcript of Arraignment | 706-711 |
| 6-5 | Exhibit 35-2 to Return of Writ—Transcript of Bail Hearing | 712-717 |
| 6-6 | Exhibit 35-3 to Return of Writ—Transcript of Jury Trial | 718-1077 |
| 6-7 | Exhibit 35-4 to Return of Writ—Transcript of Sentencing | 1078-1086 |
| 6-8 | Exhibit 36 to Return of Writ—Transcript of Evidentiary Hearing | 1087-1153 |
| 10 | Reply to Respondent's Answer | 1159-1190 |
| 11 | Report and Recommendation | 1191-1216 |
| 12 | Objection to Magistrate Judge's Report and Recommendation | 1217-1227 |
| 13 | Opinion and Order adopting and affirming the Report and Recommendation | 1228-1235 |
| 16 | Notice of Appeal | 1239-1240 |